UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BRIAN KEITH MOOLENAAR,

     Plaintiff,

   -against-         **MEMORANDUM & ORDER**
                24-CV-8636 (NRM) (TAM)

VICTOR KNAPP, Attorney; SCOTT BOOKSTEIN,
Attorney; ALAN M. PERRY, PhD., Queens Forensic
Psychiatric Evaluation Court Clinic;
FIONA RADCLIFF, Queens Forensic Psychiatric
Evaluation Court Clinic;
LYNELLE MAGINLEY-LIDDIE, Commissioner,
NYC Department of Corrections; MICHAEL FOX,
Attorney; SARAH DAVICA, Attorney,

     Defendants.
-----------------------------------------------------------------------X

**NINA R. MORRISON**, United States District Judge:

  Plaintiff Brian Moolenaar filed this *pro se* civil rights action on November 14, 2024, initially in the United States District Court for the Southern District of New York before it was transferred to this Court on December 18, 2024.  On August 20, 2025, the Court dismissed New York Supreme Court Justice Ira H. Margulis, Queens District Attorney Melinda I. Katz, and Assistant District Attorney Kanella Georgopoulos on immunity grounds.  The Court then dismissed the case for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) on March 9, 2026, after Plaintiff failed to respond to the remaining Defendants' motions to dismiss.  Plaintiff eventually filed his opposition to the motions to dismiss on March 31, 2026 — twenty days after judgment was entered.  For the reasons below, Plaintiff's opposition is construed as a motion for reconsideration under Fed. R. Civ. P. 59(e) and 60(b) and hereby granted.

1

## BACKGROUND

Moolenaar's original and amended complaints stem from his criminal proceedings for alleged assault and second-degree murder in Queens Supreme Criminal Court (Indictment Nos. 70226/2022 and 72370/2023).[1] He filed his initial complaint in the United States Court for the Southern District of New York on November 14, 2024, accusing the judge, members of the Queens County District Attorney's office, defense counsel (Defendants Victor Knapp and Scott Bookstein), and forensic psychiatrists (Defendants Alan M. Perry and Fiona Radcliffe (sued as Fiona Radcliff)) involved with his criminal case — along with the Commissioner of the New York Department of Corrections and Community Supervision — of misconduct and constitutional violations. ECF No. 1 at 2–3, 7. Specifically, Plaintiff alleged that Defendants failed to follow New York laws of criminal procedure when they declared him "unfit by mental defect without first entering a direct motion for a Guardian ad litem." *Id.* at 4. The complaint also seemingly references a lien placed on Plaintiff's property, which he characterized as "a fraudulent claim upon [an] incorporated trust."[2] *Id.* at 5 (citation modified).

---

[1] *See* N.Y.C. Dep't of Corr., *Person in Custody Lookup Service*, https://a073-ils-web.nyc.gov/inmatelookup/pages/home/home.jsf (last visited May 4, 2026).

[2] Most of the complaint's attachments concern an alleged lien on Plaintiff's property in the amount of $84 million. *See* ECF No. 1 at 5. Plaintiff accused the Honorable Gia Morris — one of the judges who presided over his criminal proceedings — of issuing an execution lien against his personal property. *See* ECF No. 7 at 20, 53. The notion of a lien on his property appear to stem from "proceeds removed" from his incarcerated account. *See* ECF No. 1 at 5–6, 9. While Plaintiff

Plaintiff filed a first amended complaint on December 16, 2024, against many of the same defendants named in the original complaint. ECF No. 7 at 1. He accused Defendants of forcibly transporting him from Rikers Island without allowing him to take his personal items — specifically, a secure tablet — with him. *Id.* at 2. He requested an investigation to locate his tablet, along with its prompt return, but did not clearly state a claim for relief. *See id.* at 4–5. Plaintiff also included a number of exhibits to the amended complaint, including: a copy of Indictment 70226-22/001 charging him with attempted murder, first-degree assault, and criminal possession of a weapon in the fourth degree; a copy of Indictment 72370-23/001 charging him with second-degree murder (after his victim succumbed to his injuries); and an Order of Commitment signed by the Honorable Gia Morris on November 20, 2023, made on motion by Defendant Knapp, and listing Defendants Perry and Radcliffe as forensic examiners. *See* ECF No. 7-1 at 19–26.

---

included a copy of transactions from his incarcerated account, none appear to reflect garnishments by the Court or the State of New York. *Id.* at 9.

The inferences giving rise to Plaintiff's monetary damages are somewhat convoluted. It seems that Plaintiff represented himself as the surety to bonds allegedly issued against him, and he pledged the PQNAX mutual fund (CUSIP: 018918649) — ostensibly worth $998,314,000 as of September 2022 — as assets in support of the bond. *See* ECF No. 7-1 at 27–29. He also advanced his "BRIAN-KEITH: MOOLENAAR TRUST" — for which he has a registered service mark within the State of New York but provides no other certificate of trust — as the financial institution submitting the pledge of securities on his behalf. *Id.* at 18, 27. According to Plaintiff, during a May 26, 2023 video conference, Defendants Knapp and Bookstein conducted a search for the PQNAX fund and stated that it contained only $914 million in assets. *See* ECF No. 7 at 23–24. This led Plaintiff to conclude that "the Clerk of the Court had already transferred [$84 million] from the account and deposited the embezzled proceeds into an escrow account" at the Queens Supreme Criminal Court. *Id.* at 24.

On December 18, 2024, the case was transferred to this Court. Between January 21, 2025, and June 3, 2025, Plaintiff filed ten exhibits, letters, and affidavits — often filing multiple submissions during a particular week. Most of these documents were attached to Plaintiff's original and amended complaints or contain the order transferring the case to this Court.[3] In one document, filed February 14, 2025, Plaintiff claimed that the charges against him were dismissed, "thereby barring any further prosecution" against him. ECF No. 14 at 6. He alleged that he was being "unlawfully detained" at North Infirmary Command ("N.I.C."), after being "found fit by doctors Dabo and Nessles on April 29th, 2024" and discharged from Kirby Forensic Psychiatric Center ("Kirby") on May 8, 2024. *Id.* at 6–7. In another, filed May 15, 2025, Plaintiff included a petition for writ of habeas corpus he filed on March 12, 2025. ECF No. 17 at 6–11. He insisted that his criminal charges were dismissed on May 8, 2024. *Id.* at 7. To support this, Plaintiff included a Notice of Meeting regarding his application for change in status. *Id.* at 12. This Notice informed Plaintiff of a meeting to be held on April 8, 2024, during which a Dr. Frischer would conduct an examination to determine whether Plaintiff was fit to proceed. *Id.* Plaintiff again insisted that he was found fit to proceed on April 29, 2024, this time by Drs. Frischer, Nessles, and Dabo. *Id.* at 13.

I.    *Second Amended Complaint*

---

[3] A more detailed review of these documents can be found in the Court's Memorandum and Order granting Plaintiff leave to file a second amended complaint.*See* ECF No. 21.

On June 30, 2025, the Court granted Plaintiff leave to file a second amended complaint that would conform with Rule 8(a) of the Federal Rules of Civil Procedure ("FRCP"). ECF No. 21. The Court ordered Plaintiff to "clearly identify the individual defendants whom he believes violated his rights and include specific factual details about how each defendant violated his rights" within thirty days of its Order. *Id.* at 9.

Between July and August 2025, Plaintiff filed three different documents entitled "Second Amended Complaint."[4] The first was filed on July 31, 2025, *see* ECF No. 26, and was accepted by the Court in light of circumstances raised in Plaintiff's July 30, 2025 letter. *See* ECF No. 25 at 3 (indicating that Plaintiff had not yet received the Court's Memorandum and Order granting leave to amend as of July 9, 2025); *see also* Order dated Aug. 1, 2025. The second version was filed on August 5, 2025, and is virtually identical to the one filed on July 31, 2025 — save for a single exhibit to be discussed further below. *See* ECF No. 28. On August 12, 2025, Plaintiff filed the third version of his Second Amended Complaint. ECF No. 29. In this version — among other distinctions from the first two — Plaintiff stated that he was transferred from N.I.C. to Kirby on July 14, 2025. *Id.* at 2–4. This transfer may have interrupted Plaintiff's ability to receive and respond to the Court's orders in a timely fashion. *See* ECF No. 30 at 2 n.1.

---

[4] These filings came after Plaintiff submitted four exhibits and/or affidavits to the Court between July 7 and July 30, 2025. These submissions largely consisted of information and/or documents already filed with the Court. *See* ECF No. 22; ECF No. 23; ECF No. 24; ECF No. 25.

As noted above, the Second Amended Complaint versions filed on July 31 and August 5, 2025 are roughly identical.[5]  In both, Plaintiff alleged that he was found fit to proceed on April 29, 2024, and that his criminal charges were dismissed on May 8, 2024.  ECF No. 26 at 2.  He accused Judge Ira H. Margulis — the presider over his criminal case — of "malicious judicial conduct" for continuing to order him "produced in court . . . with his arms cuffed behind his back with leg irons until January 22nd, 2025."  *Id.* at 2–3.  He also accused Queens County District Attorney Melinda Katz and Assistant District Attorney Kanella Georgopoulos of malicious prosecution for "continu[ing] to prosecute a case that clearly did not exist."  *Id.* at 3.

Plaintiff also accused his attorneys — Defendants Michael Fox and Sarah DeVita (sued as Sarah DaVica) — of perjuring themselves during a June 25, 2025 video conference in Bronx Supreme Criminal Court.  *Id.* at 4.  According to Plaintiff, his attorneys lied by representing that they had a commitment order for him, because he had not been "evaluated by any psychiatrist since having [his] charges dismissed May 8th, 2024."  *Id.* at 4–5 (citation modified).  In support of this, Plaintiff attached a partial printout of Case Details for Case No. SMZ-71559-25/001 in Bronx Supreme Criminal Court.  *Id.* at 10.  The document listed appearances scheduled for April 23, May 7, and May 21, 2025, but made no reference to any appearances on June 25, 2025.  *Id.*  Plaintiff also included a transcript from proceedings held on January 22, 2025, before Judge Margulis in Queens County Criminal Court, regarding Indictment

---

[5] For ease of reference, citations to these two documents will be to the version filed on July 31, 2025, ECF No. 26, unless otherwise noted.

Nos. 72370-23 and 70226-22. *See id.* at 11. During these proceedings, Defendant insisted that he was not the defendant, but rather the secured party; he further accused the prosecution and his defense counsel of being the "real defendant[s]." *Id.* at 18–19. In response, Judge Margulis found Plaintiff unfit, and ordered him returned to the New York State Office of Mental Health ("OMH"). *See id.* at 19–20; ECF No. 28 at 10. The Second Amended Complaint version filed on August 5, 2025 includes a copy of the Order of Commitment pursuant to New York Civil Practice Law § 730.50, which deemed Plaintiff incapacitated and ordered him to the care of the OMH for one year from January 22, 2025. *See* ECF No. 28 at 10–11.

The third version of the Second Amended Complaint, filed on August 12, 2025, differs slightly from the first two. ECF No. 29. It is principally concerned with Plaintiff's alleged transfer from N.I.C. to Kirby on July 14, 2025, despite his contention that his case was dismissed. *Id.* at 2–3. Plaintiff claimed that the discharge order included a "bogus" commitment order dated January 22, 2025 — "bogus" because Plaintiff had been "found fit to proceed by Dr. Frischer, Dr. Nessles, and Dr. Dabo" on April 8, 2024,[6] and "ha[d] not been seen by any psychiatrist since th[at] date." *Id.* at 4, 6. He inferred that this discharge order came from Defendant Lynelle Maginley-Liddie and alleged that they came in "pure retaliation . . . for [] exercising his rights by suing the defendants." *Id.* at 6.

---

[6] Plaintiff does not acknowledge the discrepancy between this date and the April 29, 2024 date alleged in his previous filings.

Plaintiff also accused Defendants Knapp and Bookstein for "aid[ing] the Court in introducing and manufacturing fabricated evidence by concurring with the Courts' violations of plaintiff's rights." *Id.* at 8 (citation modified). Plaintiff appeared to be referring to the January 22, 2025 Order of Commitment, which indicated that "the Court, prosecutor, and defense counsel [] concurred that [Plaintiff] lacks the capacity to understand the proceedings against [him] or to assist in [his] own defense." *Id.* at 13. He also accused Judge Margulis of "operating . . . way beyond the scope of authority by creating two psychiatrist[s] in his commitment order that clearly were not present at the hearing of 1/22/25." *Id.* at 9. The January 22, 2025 Order of Commitment makes no apparent reference to any psychiatrists, or parties beyond Plaintiff, his counsel, the judge, and prosecution. *See id.* at 13–14.

Finally, Plaintiff accused Commissioner Ann Marie Sullivan of the OMH[7] of "detaining [him] unlawfully" at Kirby, "violating [his] private and constitutional" rights. *See id.* at 10 (citation modified). He claimed that due to his transfer, he lacked access to his habeas corpus proceedings — including a hearing allegedly scheduled for July 16, 2025 — as well as a law library and "documents to file with the Court." *See id.* at 7.

II.    *Procedural Posture*

On August 20, 2025, the Court dismissed Judge Margulis, Melinda Katz, and Kanella Georgopoulos from this action, on immunity grounds pursuant to 28 U.S.C.

---

[7] Commissioner Sullivan is not included in any of the captions for the Second Amended Complaint versions.

§ 1915A(b).  ECF No. 30.  The Court allowed Plaintiff to proceed with his claims against Defendants Victor Knapp, Scott Bookstein, Alan M. Perry, Fiona Radcliffe, Lynelle Maginley-Liddie, Michael Fox, and Sarah DeVita.  *Id.* at 9.

Over the span of two weeks — from August 26 to September 9, 2025 — Plaintiff made five submissions to the Court's docket.  *See* ECF No. 31; ECF No. 33; ECF No.; ECF No. 35; ECF No. 37; ECF No. 38.  These included affidavits of service and letters to the undersigned and the Eastern District of New York's *Pro Se* Office.  *See* ECF No. 33; ECF No. 37; ECF No. 38.  Over multiple documents — including one entitled "Second Amended Complaint," ECF No. 35 — Plaintiff accused authorities at Kirby of "suppress[ing]" his case by mishandling and tampering with his mail.  *See* ECF No. 33 at 1–2; ECF No. 35 at 4.  Additionally, in another document, Plaintiff stated that he was "threatened by a team of officers at Rikers Island" and "kidnapped and taken away to Kirby" on February 27, 2024.  ECF No. 31 at 6–7 (citation modified).  He claimed that this happened after Defendants Radcliffe and Perry "maliciously and deliberately diagnose[d]" him.  *Id.* at 8.  Plaintiff also included an Examination Report by forensic evaluators Drs. Louise Mullan and Jeremy Colley relating to Indictment Numbers IND-70226-22/001 and IND-72370-23/001.  *Id.* at 19.  The report documented the forensic evaluators' attempt to perform a competency evaluation on Plaintiff on September 27, 2024, after which they were unable to render an opinion. *Id.* at 19–21.

On September 19, 2025, a summons was issued as to Defendants Bookstein, DeVita (sued as DaVica), Fox, Knapp, Maginley-Liddie, Perry, Radcliffe (sued as

Radcliff), and Commissioner Sullivan. ECF No. 39. Between November 24, 2025 and January 18, 2026, Defendants — save for Defendant Fox (who, at present, has not yet appeared) — filed motions to dismiss Plaintiff's Second Amended Complaint, liberally construed. *See* ECF No. 44; ECF No. 63; ECF No. 69; ECF No. 74; ECF No. 77. Collectively, Defendants raise grounds for dismissal based on FRCP Rules 4(e), 8(a), 12(b)(1), and 12(b)(6), as well as sovereign and qualified immunity. *See* ECF No. 44; ECF No. 63; ECF No. 69; ECF No. 74; ECF No. 77.

Plaintiff was originally ordered to respond to the motions to dismiss by February 9 and February 18, 2026. *See* Order dated Nov. 25, 2025; Order dated Jan. 9, 2026. After Plaintiff missed these deadlines, the Court *sua sponte* extended Plaintiff's opposition deadline to March 6, 2026. Order dated Feb. 24, 2026. The Court further warned that "[f]ailure to follow Court-ordered briefing schedules or respond to Defendants' motions to dismiss may result in dismissal for failure to prosecute, or the Court granting the . . . motions as unopposed." *Id.*

On March 9, 2026 — following continued silence from Plaintiff — the Court dismissed the case for failure to prosecute and dismissed Defendants' motions as moot. *See* Order dated Mar. 9, 2026. The Clerk of Court entered judgment on March 11, 2026. ECF No. 87.

Plaintiff finally filed an opposition on March 31, 2026, along with another document entitled "Reply in Opposition" on April 14, 2026. *See* ECF No. 88; ECF No.

89.  These documents are effectively identical.  In his opposition,[8] Plaintiff largely reiterates the allegations contained in his Second Amended Complaint, broadly construed.  He also mentions that he was transferred to Rose M. Singer Enhanced Supervised Housing ("RESH") in December 2025, and he has since fallen ill as a result of being placed in a dormitory with sealed windows and "air vents [] clogged with dust."  ECF No. 88 at 3.  Plaintiff further states that his allergies were exacerbated by fights that broke out on February 12 and 13, 2026, during which corrections officers "sprayed a noxious gas that had [Plaintiff] and the other[] detainees throwing [up] and gagging from not being able to breath[e]." *See id.* at 3–4.  Finally, Plaintiff notes that he did not receive the Court's Order until March 11, 2026, although he does not specify which order he is referring to. *Id.* at 5.  He asks the Court to accept his opposition both as a Freedom of Information Law request and because "it was beyond [Plaintiff's] control to respond promptly" due to his current illness. *See id.* at 5.

## LEGAL STANDARD

Because Plaintiff's opposition was filed after judgment entered in this case, it may be construed as a motion for reconsideration, which can be brought under FRCP Rules 59(e) and 60(b).  Under Rule 59(e), a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  In contrast, Rule 60(b) allows a party to be relieved from final judgment for

---

[8] For ease of reference, citations to Plaintiff's opposition will be to ECF No. 88.

11

different reasons, including for "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Such a motion must be brought "within a reasonable time" — at most, "no more than a year after the entry of the judgment" for motions based on mistake, inadvertence surprise, or excusable neglect. *Id.* at 60(c)(1).

In determining whether a party has suffered from excusable neglect, the Court must consider "(1) the danger of prejudice to the [other party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Chapman v. Ring's End, Inc.*, No. 17-CV-01084 (VAB), 2021 WL 2186410, at *4 (D. Conn. May 28, 2021) (citation omitted). In contrast, reconsideration per Rule 60(b)(6) — for "any other reason that justifies relief" — is only warranted under "extraordinary circumstances." *See Ackermann v. United States*, 340 U.S. 193, 199, 202 (1950) (citation omitted).

Motions for reconsideration are subject to a "strict" standard, where "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such motions are only granted "when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

12

## DISCUSSION

Plaintiff's opposition — filed twenty days after judgment entered in this case — is timely as a motion for consideration under Rules 59(e) and 60(b). While the bar for reconsideration motions is high, it is warranted to "correct a clear error" — specifically, the Court's dismissal for failure to prosecute. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (citation omitted) (characterizing dismissal for failure to prosecute as "a harsh remedy to be utilized only in extreme situations"); *Azzarmi v. Neubauer*, No. 20-CV-9155 (KMK), 2023 WL 6255678, at *2 (S.D.N.Y. Sep. 26, 2023) (withdrawing the previous dismissal for failure o prosecution, in part because the court "did not explicitly consider a lesser sanction").

Before dismissing for failure to prosecute under FRCP Rule 41(b), a court must consider "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Heendeniya v. St. Joseph's Hosp. Health Ctr.*, 830 F. App'x. 354, 357 (2d Cir. 2020) (summary order) (citation omitted). It is among "the harshest of sanctions," *Baptiste v. Sommers*, 768 F.3d 212, 217 (2d Cir. 2014) (citation omitted), and "district courts 'should be especially hesitant' to dismiss a *pro se* litigant's complaint for procedural deficiencies," *Styles v. Goord*, 431 F. App'x. 31, 32 (2d Cir. 2011) (summary order).

13

Plaintiff's delay in complying with the Court order (before the case was dismissed) spanned only about a month: he was originally directed to file an opposition by February 9 and 18, 2026, and the case was dismissed on March 9, 2026 — after he missed his March 6, 2026 deadline. This delay was not significant enough to prejudice Defendants or support dismissal. *See LeSane*, 239 F.3d at 210 (finding that plaintiff's non-compliance with a court order lasted "barely a month" and "does not much weigh in favor of dismissal"); *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (noting that a delay of 39 days did not prejudice defendants, who "never even complained about [plaintiff's] tardiness"); *cf. Heendeniya*, 830 F. App'x. at 358. Further, while Plaintiff was on notice that he risked dismissal for failure to prosecute, the warning was brief and technical, and thus this factor weighs only slightly in favor of dismissal. *See LeSane*, 239 F.3d at 210.

With respect to balancing the Court's docket with Plaintiff's interest in being heard, the Second Circuit has noted that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated." *Lucas*, 84 F.3d at 535. No doubt Plaintiff has been a serial filer of letters, affidavits, and exhibits in this case. He made at least nineteen submissions, not including versions of his Second Amended Complaint, between January and September 2025 — many of which are either duplicate filings or contain redundant documentation. However, besides his opposition, he had not filed anything on the docket since December 2025 — months before he was warned of dismissal for failure to prosecute on February 24, 2026. More importantly, the relevant congestion for

14

Rule 41(b) dismissal purposes are "irrelevant or obstructionist filings" made during a plaintiff's delay, not beforehand.[9]  *See LeSane*, 239 F.3d at 210; *Coats v. Dep't of Veteran Affs.*, 268 F. App'x 125, 127 (2d Cir. 2008) (summary order).

Finally, while the Court's warnings regarding a failure to prosecute mentioned that Defendants' motions could be treated as unopposed, it may have been more suitable to resolve the motions to dismiss, rather than dismiss under Rule 41(b).  *See LeSane*, 239 F.3d at 211 ("[W]e wish to make clear that in cases such as these, resolutions on [a dispositive motion] . . . are generally to be preferred to dismissals under Rule 41(b).").

## CONCLUSION

For the reasons discussed above, Plaintiff's opposition — construed as a motion for reconsideration — is GRANTED.  The Court hereby vacates its Order Dismissing Case dated March 9, 2026.  The Clerk of Court is respectfully directed to reopen the above-captioned case.

The Court will proceed to consider the merits of Defendants' motions to dismiss, along with Plaintiff's opposition.  If Defendants wish to file a reply to Plaintiff's opposition, they may do so within thirty days of this Order.

The Clerk of Court is respectfully requested to mail a copy of this Order to Plaintiff at the address provided in his opposition, ECF No. 88, and to note the mailing on the docket.

---

[9] The Court further notes that, while at times duplicative, Plaintiff's filings were never obstructionist or irrelevant.

15

**SO ORDERED.**

Dated:  June 1, 2026                                   */s/ Nina R. Morrison*
       Brooklyn, New York                       Nina R. Morrison
                                               United States District Judge